UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
--------------------------------------------------------------------- X

**ABRAHAM RON FRAENKEL,** individually, as
personal representative of the Estate of YAAKOV
NAFTALI FRAENKEL, and as the natural guardian of
plaintiffs A.H.H.F., A.L.F., N.E.F., N.S.F. and S.R.F.

516 Nof Ayalon, Nof Ayalon 9978500, Israel;

Civ. No.

**RACHEL DEVORA SPRECHER FRAENKEL,**
individually, as personal representative of the Estate of
YAAKOV NAFTALI FRAENKEL, and as the natural
guardian of plaintiffs A.H.H.F., A.L.F., N.E.F., N.S.F. and
S.R.F

516 Nof Ayalon, Nof Ayalon 9978500, Israel;

**TZVI AMITAY FRAENKEL**

516 Nof Ayalon, Nof Ayalon 9978500, Israel;

**A.H.H.F.**, a minor, by her natural guardians ABRAHAM
RON FRAENKEL and RACHELLE DEVORA SPRECHER
FRAENKEL

516 Nof Ayalon, Nof Ayalon 9978500, Israel;

**A.L.F.**, a minor, by her natural guardians ABRAHAM RON
FRAENKEL and RACHELLE DEVORA SPRECHER
FRAENKEL

516 Nof Ayalon, Nof Ayalon 9978500, Israel;

**N.E.F.**, a minor, by her natural guardians ABRAHAM RON
FRAENKEL and RACHELLE DEVORA SPRECHER
FRAENKEL

516 Nof Ayalon, Nof Ayalon 9978500, Israel;

**N.S.F.**, a minor, by her natural guardians ABRAHAM RON
FRAENKEL and RACHELLE DEVORA SPRECHER
FRAENKEL

516 Nof Ayalon, Nof Ayalon 9978500, Israel;

**S.R.F.**, a minor, by his natural guardians ABRAHAM RON

1

FRAENKEL and RACHELLE DEVORA SPRECHER
FRAENKEL

516 Nof Ayalon, Nof Ayalon 9978500, Israel;

                                        Plaintiffs,

                        -against-

**THE ISLAMIC REPUBLIC OF IRAN**
Ministry of Foreign Affairs
Khomeini Ave. United Nations St.
Teheran, Iran;

**THE IRANIAN MINISTRY OF INFORMATION AND
SECURITY**
Pasdaran Ave. Golestan Yekon Teheran, Iran

and

**THE SYRIAN ARAB REPUBLIC**
c/o Foreign Minister Walid al-Mualem
Ministry of Foreign Affairs
Shora, Muajireen, Damascus, Syria

                        Defendants.

------------------------------------------------------------------------------- X


## COMPLAINT

Plaintiffs, by their counsel, complain of the Defendants, and hereby allege for their

Complaint as follows:

## INTRODUCTION

1.      This is a civil action for wrongful death, personal injury and related torts pursuant

to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq*., arising from the

kidnapping and murder of three teenagers by the Hamas terrorist organization in June 2014 (the

"Kidnapping and Murder"). The three boys, Yaakov Naftali Fraenkel (age 16), Gilad Shaer (age

16), and EyalYifrah (age 19) were targeted by Hamas terrorists for being Israeli residents.

2.      The Kidnapping and Murder was carried out by Hamas using material support and resources provided by defendants the Islamic Republic of Iran and the Syrian Arab Republic.

3.      Decedent Yaakov Naftali Fraenkel ("Naftali"), a sixteen year-old United States citizen domiciled in Israel was held captive by the kidnappers for an unknown period of time and then brutally shot during the course of the Kidnapping and Murder.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330-1332, 1367 and 1605A(a).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4) and the rules of pendent venue.

## THE PARTIES

6.      Plaintiffs Abraham Ron Fraenkel and Rachel Devora Sprecher Fraenkel at all times relevant hereto are and were the parents, heirs and personal representatives of the estate of decedent Yaakov Naftali Fraenkel, who was murdered in the Kidnapping and Murder, and the parents of minor plaintiffs A.H.H.F., A.L.F., N.E.F., N.S.F. and S.R.F.  Plaintiff Rachel Devora Sprecher Fraenkel is a United States citizen domiciled in Israel. Plaintiffs Abraham Ron Fraenkel and Rachel Devora Sprecher Fraenkel bring this action individually, on behalf of the estate of Yaakov Naftali Fraenkel, and as natural guardians of their minor children, A.H.H.F., A.L.F., N.E.F., N.S.F. and S.R.F.

7.      Plaintiff Tzvi Amitay Fraenkel at all times relevant hereto is and was a United States citizen domiciled in Israel, and the brother of decedent Yaakov Naftali Fraenkel.

8.      Plaintiff A.H.H.F., minor, at all times relevant hereto is and was a United States citizen domiciled in Israel, and the sister of decedent Yaakov Naftali Fraenkel.

9.      A.L.F., minor, at all times relevant hereto is and was a United States citizen domiciled in Israel, and the sister of decedent Yaakov Naftali Fraenkel.

10.      N.E.F., minor, at all times relevant hereto is and was a United States citizen domiciled in Israel, and the sister of decedent Yaakov Naftali Fraenkel.

11.      N.S.F., minor, at all times relevant hereto is and was a United States citizen domiciled in Israel, and the sister of decedent Yaakov Naftali Fraenkel.

12.      S.R.F.,minor, at all times relevant hereto is and was a United States citizen domiciled in Israel, and the brother of decedent Yaakov Naftali Fraenkel.

13.      Defendant The Islamic Republic of Iran ("Iran") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated since 1984 as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Iran, through its political subdivisions, agencies, instrumentalities, officials, employees and agents, including the Iranian Ministry of Information Security, provided Hamas with material support and resources, for acts of extrajudicial killing and hostage taking within the meaning of 28 U.S.C. § 1605A(a)(1), including the Kidnapping and Murder, and performed other actions that enabled, facilitated and caused the Kidnapping and Murder and harm to the plaintiffs herein.

14.      Defendant The Iranian Ministry of Information and Security ("MOIS") is the Iranian intelligence service. Within the scope of its agency and office, MOIS provided material support and resources for the commission of acts of extrajudicial killing and hostage taking, including the Kidnapping and Murder, and performed other actions, that enabled, facilitated and caused the Kidnapping and Murder and harm to the plaintiffs herein.

15.      Defendant The Syrian Arab Republic (hereinafter "Syria") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated as a state

sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Syria provided Hamas with material support and resources for the commission of acts of extrajudicial killing and hostage taking within the meaning of 28 U.S.C. § 1605A(a)(1), including the Kidnapping and Murder, and performed other actions that enabled, facilitated and caused the Kidnapping and Murder and harm to the plaintiffs herein.

## UNDERLYING FACTS

### Hamas

16.    Hamas is a radical terrorist organization that was established by Islamic militants in 1987.  It is the Palestinian branch of the extremist Muslim Brotherhood organization. Hamas views Israel and the United States as the greatest enemies of Islam. Hamas opposes a peaceful resolution of the Middle East conflict. The Hamas charter, first published in 1988, states that "There is no solution to the Palestinian problem except by Jihad," or violent struggle against Israel and the West.

17.    Hamas's openly-declared goal is the creation of an Islamic state in the territory of Israel, the West Bank and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. Hamas seeks to achieve this goal by carrying out terrorist attacks against Jewish civilians in Israel, the West Bank and the Gaza Strip. Hamas proudly and openly acknowledges that it uses terrorism to achieve its political goals. Hamas employs terrorism and violence in an effort to coerce, intimidate and influence government decision-makers and the public in Israel to accept Hamas's demands.

18.    Between the time of its founding and June 12, 2014 (and until the present day), Hamas has carried out thousands of terrorist attacks in Israel, the West Bank and the Gaza Strip, in which scores of Israeli and U.S. citizens were murdered and hundreds more wounded.

19.     Between the time of its founding in 1987 and June 12, 2014, Hamas's policy and practice of carrying out terrorist attacks was and is notorious and well known to the public at large, including the defendants.

20.     Between 1999 and June 12, 2014, the courts of the United States, including this Court, published a number of decisions finding that Hamas was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

21.     Hamas has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

**Iran's Provision of Material Support and Resources to the Hamas**

22.     Since 1984 until the present time, defendant Iran has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

23.     During the period relevant hereto, including the several year period preceding the Kidnapping and Murder, defendants Iran and MOIS provided Hamas with massive financial support with the specific intention of causing and facilitating the commission of acts of extrajudicial killing, hostage taking and international terrorism including the Kidnapping and Murder. Such financial support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Iran, in order to assist Hamas achieve goals shared by Iran. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness.

24.     The Iranian defendants provided this financial support to Hamas pursuant to an agreement reached between Iran and Hamas in the 1980s which remains in force until today. Under that agreement, Hamas undertook to carry out acts of extrajudicial killing, hostage taking and terrorism against Jews in Israel, the West Bank and Gaza, and in return Iran undertook to provide Hamas with financial support to carry out such extrajudicial killings, hostage takings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

25.     The Iranian defendants gave substantial aid, assistance and encouragement to one another and to Hamas, and provided massive financial support to Hamas, and thereby aided and abetted Hamas, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing, hostage taking and international terrorism including the Kidnapping and Murder. The Iranian defendants did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to Hamas.

26.     The Iranian defendants knowingly and willingly conspired, agreed and acted in concert with one another and with Hamas, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing, hostage taking and international terrorism including the Kidnapping and Murder. The Iranian defendants did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas.

27.     At all times relevant hereto, defendant MOIS was an agency, instrumentality and/or office of defendant Iran, and performed acts on behalf of defendant Iran, in furtherance of

the interests and policy of defendant Iran and within the scope of its agency and office, within the meaning of 28 U.S.C. § 1605A(a)(1) and 28 U.S.C. § 1605A(c), which caused the Kidnapping and Murder and harm to the plaintiffs herein, in that defendant MOIS implemented and acted as a conduit and instrumentality for Iran's provision of funds to Hamas for the commission of acts of extrajudicial killing, hostage taking and international terrorism including the Kidnapping and Murder.

28.   Defendant Iran authorized, ratified and approved the acts of defendant MOIS.

29.   Accordingly, defendant Iran is vicariously liable for the acts of defendant MOIS.

30.   This Court repeatedly has held Iran and MOIS liable to victims of state-sponsored terrorism, particularly for terrorist acts carried out by Hamas in Israel. *See, e.g., Bennett v. Islamic Republic of Iran,* 507 F. Supp.2d 117 (D.D.C. 2007); *Bodoff v. Islamic Republic of Iran*, 424 F. Supp.2d 74 (D.D.C. 2006); *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003); *Stern v. Islamic Republic of Iran*, 271 F. Supp.2d 286 (D.D.C. 2003); *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13 (D.D.C. 2002).

**Syria's Provision of Material Support and Resources to Hamas**

31.   Since 1979 until the present time, defendant Syria has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

32.   During the period relevant hereto, including the several year period preceding the Kidnapping and Murder, defendant Syria provided Hamas with material support and resources within the meaning of 28 U.S.C. § 1605A(a)(1), described in detail below, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing, hostage taking, and international terrorism including the Kidnapping and Murder. Such support was provided continuously, routinely and in furtherance and as implementation of a specific policy

8

and practice established and maintained by Syria, in order to assist Hamas achieve goals shared by Syria. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness.

33.     Defendant Syria provided the material support and resources detailed below to Hamas pursuant to an agreement reached between Syria and Hamas in the late 1980s. Under that agreement, Hamas undertook to carry out acts of extrajudicial killing, hostage taking and terrorism against Jews in Israel, the West Bank and Gaza, and in return Syria undertook to provide Hamas with material support and resources to carry out such extrajudicial killings, hostage takings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

34.     The material support and resources which were provided by Syria to Hamas in the years preceding the Kidnapping and Murder for the purpose of facilitating acts of extrajudicial killing, hostage taking and terrorism included *inter alia*: provision of financial support to Hamas for the purpose of carrying out terrorist attacks; provision of military-grade explosives, military firearms and other weapons and materials to Hamas; provision of specialized and professional military training for the planning and execution of terrorist attacks (hereinafter: "terrorist training") to Hamas; providing use of Syria-owned and operated training bases and military facilities in which terrorist training was provided to Hamas and its terrorist operatives; providing Hamas and its terrorist operatives with safe haven and refuge from capture in Syria and in areas of Lebanon controlled by Syria; providing Hamas means of electronic communication and electronic communications equipment for carrying out terrorist attacks; financial services, including banking and wire transfer services, provided to Hamas by financial institutions owned and controlled by Syria at Syria's direction, which services were intended to and did enable Hamas to surreptitiously transfer funds used to finance terrorist attacks; and means of

transportation, including allowing terrorist operatives of Hamas passage and transportation on Syrian-owned aircraft to allow them to avoid detection and carry out further terrorist attacks.

35.     At all times relevant hereto, defendant Syria provided Hamas and its terrorist operatives with terrorist training at military training bases, camps and facilities operated and/or funded and/or controlled by Syria and located in Syria and in areas of Lebanon controlled by Syria, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing, hostage taking and international terrorism including the Kidnapping and Murder. This terrorist training, which was professional and extensive and included the use of explosives, firearms and other weapons, was provided by and through Syrian military and intelligence officials, and other agents, employees and officials of Syria acting within the scope of their agency and employment and under the express command and authorization of Syria.

36.     In addition, at all times relevant hereto, Syria provided terrorist training, weapons, and funds to be used to carry out terrorist attacks to Hamas and its terrorist operatives, by and through the agency of other terrorist organizations which received material support and resources from Syria, and which acted as instrumentalities, agents and proxies of Syria for the purpose of providing terrorist training and other material support and resources to Hamas.

37.     At all times relevant hereto, Syria provided Hamas and its terrorist operatives with lodging, safe haven and shelter in Syria and in areas of Lebanon controlled by Syria, with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing, hostage taking and international terrorism freely and unhindered. This lodging, safe haven and shelter was provided on military bases and facilities, and in residences, owned and controlled by Syria.

38.     Syria gave substantial aid, assistance and encouragement to Hamas, and provided the massive material support and resources described above to Hamas, and thereby aided and

abetted Hamas, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing, hostage taking and international terrorism including the Kidnapping and Murder. Defendants Syria did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to the Hamas.

39.     Syria knowingly and willingly conspired, agreed and acted in concert with Hamas, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing, hostage taking and international terrorism including the Kidnapping and Murder. Defendant Syria did so with actual knowledge that Hamas had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas.

**The Kidnapping and Murder**

40.     On an unknown date or dates prior to June 12, 2014, Hamas planned, conspired and made preparations to kidnap and hold hostage or murder innocent Israeli civilians by means of picking up Israeli hitchhikers in a vehicle designated for that purpose.

41.     Pursuant to the aforementioned plan, on the night of June 12, 2014, two trained agents, operatives and employees of Hamas named Marwan Qawasmeh and Amer Abu Aysha ("Hamas Kidnappers") drove a stolen vehicle with Israeli license plates on roads in Gush Etzion, southwest of Jerusalem, looking for one or more Israeli civilians to kidnap. At around 10:15 that night, Naftali, together with Gilad Shaer and Eyal Yifrah, were waiting at a bus stop in Gush Etzion, looking to hitch a ride in the direction of their homes, where they were planning on

spending the weekend.   The Hamas Kidnappers stopped and picked them up in their stolen vehicle.  Quickly, the Hamas Kidnappers drew weapons on the three youngsters in the back seat.

42.     Shortly after being abducted in the car,  Gilad Shaer managed to place a call to the police stating in a whisper that he had been kidnapped.  As a result of this telephone call, the Israeli police were able to trace the location of the missing boys to the Hebron area.

43.     The Hamas Kidnappers shot the boys at an unknown time that same evening. They then torched and abandoned the stolen Israeli vehicle, which was found by security personnel with numerous bloodstains. That same night, the Hamas Kidnappers deposited the bodies of the three murdered teenagers in a field near Hebron belonging to one of their co-conspirators, Hussam Qawasmeh (A/K/A Hussam Kawasme) ("Qawasmeh").

44.     However, the tragic fate of the three boys was not known until much later. Soon after the Israeli authorities learned of the kidnapping, the Israel Defense Forces launched a massive military operation referred to as "Brother's Keeper" to return the missing boys. Search teams were dispatched to locate the teenagers and continuously hunted for them, day and night, throughout the 18 day ordeal.  The entire State of Israel, foreign governments and millions of concerned individuals around the world maintained a prayer vigil as the search continued for the missing boys. Operation Brother's Keeper continued until June 30, 2014 when the bound bodies of the three teens, all executed by close range gunfire, were found in a field near Hebron.

45.     From June 12 to June 30, 2014, Naftali's family, including all of the plaintiffs herein, were in agony not knowing the fate of their son and brother. These feelings of mental anguish and emotional distress were only exacerbated once the bodies were found.

46.     As a result of the Kidnapping and Murder all of the plaintiffs herein have suffered and continue to suffer extreme psychological and emotional harm.

47.     On or about August 5, 2014, less than a week after the tragic conclusion of Operation Brother's Keeper, Israel announced that Israeli security forces had arrested Qawasmeh, a known Hamas operative who had previously served time in Israeli prison for Hamas related terror activities, in connection with the Kidnapping and Murder. By the time of his arrest, Qawasmeh had shaved his beard and received a fake passport, in what is believed to have been, part of a plan to escape to Jordan.

48.     Qawasmeh admitted to being the mastermind behind the Kidnapping and Murder.

49.     Hamas provided Qawasmeh with training, support and funding in connection with the Kidnapping and Murder.

50.     Among other things, Qawasmeh obtained the financing for the attack from Hamas, provided the Hamas Kidnappers – Marwan Qawasmeh and Amer Abu Aysha – with weapons and the stolen Israeli vehicle used in the kidnapping and assisted the Hamas Kidnappers to bury the bodies of the three teens on his recently acquired property near Hebron and to evade police.

51.     On or about September 23, 2014, the two Hamas Kidnappers, both suspects in the murders, were located in a building in the Hebron area and surrounded by Israeli military forces. A shootout ensued and both Marwan Qawasmeh and Amar Abu Aysha were killed. Senior Hamas officials praised the abduction and called the suspects "martyrs" and "heroes."

52.     On or about January 6, 2015, an Israeli court convicted Qawasmeh of the Kidnapping and Murder of Naftali, Gilad Shaer and Eyal Yifrah, and sentenced him to three life terms in prison for the murders.

53.     Hamas's military wing, the Izz ad-Din al-Qassam Brigades claimed responsibility for the Kidnapping and Murder.  On 20 August 2014, a senior Hamas leader, Salah al-Arouri, was tape-recorded addressing an Islamic conference in Turkey where he boasted about Hamas'

responsibility for the Kidnapping and Murder. Al-Arouri has been identified as the terrorist mastermind behind the operation.

54. The defendants conspired and acted in concert with Hamas, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the Kidnapping and Murder, and other such acts of extrajudicial killing, hostage taking and international terrorism, and the Kidnapping and Murder was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

55. Hamas carried out the Kidnapping and Murder utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the Kidnapping and Murder and other such acts of extrajudicial killing, hostage taking and international terrorism.

**FIRST CLAIM FOR RELIEF**
**FOR DAMAGES UNDER 28 U.S.C. §1605A(c)**

56. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

57. Iran is a foreign state that since 1984 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

58. Syria is a foreign state that since 1979 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

59. The defendants provided material support and resources to Hamas, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated Naftali's kidnapping and murder.

60. The Kidnapping and Murder was an act of extrajudicial killing and hostage taking within the meaning of 28 USC § 1605A.

61.     Naftali was kidnapped and murdered by the Hamas Kidnappers and his family was forced to live with the uncertainty of not knowing his fate for eighteen days. The Kidnapping and Murder of Naftali caused decedent, his estate and plaintiffs Abraham Ron Fraenkel, Rachel Devora Sprecher Fraenkel, Tzvi Amitay Fraenkel, A.H.H.F., A.L.F., N.E.F., N.S.F. and S.R.F severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

62.     As a direct and proximate result of the conduct of the defendants, Plaintiffs suffered the injuries and harm described herein.

63.     The defendants are therefore jointly and severally liable under 28 USC 1605A(c) for the full amount of plaintiffs' damages.

64.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

## SECOND CLAIM FOR RELIEF
## FOR WRONGFUL DEATH

65.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

66.     Defendants, personally and/or through their agents and/or employees and/or co-conspirators, willfully and deliberately authorized, organized, planned, aided, abetted, induced, conspired to commit, provided material support for and executed the Kidnapping and Murder.

67.     Defendants' behavior constituted a breach of legal duties to desist from committing, or aiding, abetting, authorizing, encouraging or conspiring to commit acts of extrajudicial killing and hostage taking, and to refrain from intentionally, wantonly, and/or

negligently authorizing or causing the infliction of death, physical injuries and harm to persons such as the plaintiffs herein and the decedent.

68.     Defendants' actions were willful, malicious, intentional, wrongful, unlawful, negligent and/or reckless and were the proximate cause of the Kidnapping and Murder.

69.     At the time of his death, decedent Naftali Fraenkel was 16 years of age, enjoying good health, was industrious and in possession of all his faculties.

70.     The Kidnapping and Murder of Naftali caused decedent, his estate and plaintiffs Abraham Ron Fraenkel, Rachel Devora Sprecher Fraenkel, Tzvi Amitay Fraenkel, A.H.H.F., A.L.F., N.E.F., N.S.F. and S.R.F. severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

71.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages.

72.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

### THIRD CLAIM FOR RELIEF
### ON BEHALF OF THE ESTATE OF YAAKOV NAFTALI FRAENKEL
### FOR SURVIVAL DAMAGES

73.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

74.     The Kidnapping and Murder of decedent Yaakov Naftali Fraenkel caused by defendants' actions herein caused Yaakov Naftali Fraenkel and his estate severe injury, including pain and suffering, pecuniary loss and loss of income. From the time of the kidnapping until his death, decedent Yaakov Naftali Fraenkel suffered great conscious pain, shock and physical and mental anguish.

75.     Defendants are therefore jointly and severally liable to the Estate of Naftali Fraenkel for the full amount of decedent's damages, in such sums as may hereinafter be determined.

76.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## FOURTH CLAIM FOR RELIEF
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

78.     Defendants' conduct was willful, outrageous and dangerous to human life, and violates applicable criminal law, all international standards of civilized human conduct and common decency.

79.     Defendants intended to, and did in fact, terrorize the plaintiffs, and cause them egregious emotional distress. As a result and by reason of the Kidnapping and Murder of Naftali Fraenkel, which was caused by the actions of defendants described herein, plaintiffs Abraham Ron Fraenkel, Rachel Devora Sprecher Fraenkel, Tzvi Amitay Fraenkel, A.H.H.F., A.L.F., N.E.F., N.S.F. and S.R.F. have suffered and will continue to suffer terror, severe mental anguish, bereavement and grief, and injury to their feelings.

80.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages.

81.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## FIFTH CLAIM FOR RELIEF
## FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

82.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

83.     Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

84.     Defendants' conduct terrorized the plaintiffs and caused them egregious emotional distress.

85.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages.

86.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

**SIXTH CLAIM FOR RELIEF**
**FOR CIVIL CONSPIRACY**

87.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

88.     The defendants knowingly and willingly conspired, agreed and acted in concert with each other and with Hamas in a common plan and design to facilitate and cause acts of international terrorism, extrajudicial killing, hostage taking and personal injury including the Kidnapping and Murder which harmed plaintiffs.

89.     As a result of the Kidnapping and Murder caused, resulting from and facilitated by the conspiracy between the defendants and Hamas, plaintiffs suffered the damages enumerated herein.

90.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages.

**SIXTH CLAIM FOR RELIEF**
**FOR AIDING AND ABETTING**

91.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

92.     The defendants provided Hamas with material support and resources within the meaning of 28 U.S.C. §1605A, and other substantial aid and assistance, in order to aid, abet,

facilitate and cause the commission of acts of international terrorism, extrajudicial killing, hostage taking and personal injury including the Kidnapping and Murder which harmed the plaintiffs.

93.     As a result of the Kidnapping and Murder caused, resulting from and facilitated by the defendants' provision of material support and resources and other acts of aiding and abetting, plaintiffs suffered the damages enumerated herein.

94.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages.

**SEVENTH CLAIM FOR RELIEF**
**AGAINST THE IRANIAN DEFENDANTS**
**FOR VICARIOUS LIABILITY/RESPONDEAT SUPERIOR**

95.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

96.     At all relevant times, defendant MOIS was an agent and/or office of defendant Iran, acting within the scope of its agency and/or office. Defendant MOIS engaged in the acts described herein within the scope of its agency and/or office and to further the interests of defendant Iran.

97.     Defendant Iran authorized, ratified and/or condoned the conduct of defendant MOIS.

98.     Therefore, defendant Iran is vicariously liable for the acts of defendant MOIS.

99.     The Iranian defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may be hereinafter determined.

**JURY DEMAND**

Plaintiffs demand trial by jury of all issues legally triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs demand judgment as follows:

        (a)     Judgment against all defendants, jointly and severally, for compensatory damages in an amount to be determined at trial;

        (b)     Judgment against all defendants, jointly and severally, for punitive damages in an amount to be determined at trial;

        (c)     Plaintiffs' costs and expenses;

        (d)     Plaintiffs' attorneys fees; and

        (e)     Such other and further relief as the Court finds just and equitable.

Dated: Brooklyn, New York
      July 9, 2015

                                    Respectfully submitted,

                                    THE BERKMAN LAW OFFICE, LLC
                                    *Counsel for Plaintiffs*

                                    By: _____

                                        Robert J. Tolchin
                                        (D.C. District Bar #NY0088)
                                  111 Livingston Street, Suite 1928
                                  Brooklyn, New York 11201
                                  (718) 855-3627

                                  NITSANA DARSHAN-LEITNER & CO.
                                  Nitsana Darshan-Leitner
                                  *Israeli counsel for the plaintiffs*
                                  10 Hata'as Street
                                  Ramat Gan, 52512 Israel
                                  Israeli #: 011-972-523-837-020
                                  U.S. #: 212-591-0073