UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ABRAHAM RON FRAENKEL, *et al.*,     )
                                    )
        Plaintiffs,                 )
                                    )
    v.                              )   Civil Action No. 15-1080 (RMC)
                                    )
ISLAMIC REPUBLIC OF IRAN, *et al.*, )
                                    )
        Defendants.                 )
_____ )

**MEMORANDUM OPINION ON RECONSIDERATION**

Abraham and Rachelle Fraenkel lost their son, Naftali, when Hamas terrorists kidnapped and murdered him and two other young men. The Fraenkels and their remaining six children sued the Syrian Arab Republic, Islamic Republic of Iran, and Iranian Ministry of Information and Security (MOIS), as supporters of Hamas, under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.* (2012). The Court found in the Fraenkels' favor and awarded money damages, and the Fraenkels now seek reconsideration because the damages awards "are insufficient to provide them fair compensation," specifically because the amount awarded is less than the "gold standard" for FSIA awards as set in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).

The Court will deny the motion for reconsideration, but clarifies its damages awards.

**I. BACKGROUND**

The Court provided an in-depth description of the facts in its Memorandum Opinion on the motion for default judgment and will not repeat it here. *See Fraenkel v. Islamic Republic of Iran*, No. 15-1080, 2017 WL 1214353 (D.D.C. March 31, 2017). The Fraenkels

1

sued Iran, Syria, and MOIS on July 9, 2015. *See* Compl. [Dkt. 1]. The Court held a two-day hearing on the Fraenkels' Motion for Default Judgment on December 6-7, 2016 and Plaintiffs submitted proposed findings of fact and law. *See* Proposed Findings [Dkt. 36]. On March 31, 2017, the Court issued its Memorandum Opinion and Order, finding in favor of the Fraenkels and awarding the following damages:

>Pain and Suffering to the Estate of Naftali Fraenkel – $1,000,000
>
>Solatium to U.S. Citizen Plaintiffs – $3,100,000
>
>Solatium to Abraham Fraenkel – $1,000,000
>
>Punitive Damages to the Estate of Naftali Fraenkel – $50,000,000

Final Order [Dkt. 40].

The Fraenkels moved to reopen the case and schedule a conference on the same day as the Court's Final Order, *see* Mot. for Conference [Dkt. 41], which the Court denied. 4/3/2017 Minute Order. The Fraenkels filed the instant motion on April 27, 2017 asking the Court to:

1. Amend and make new findings of fact under Rule 52(b);
2. Amend or alter the judgment under Rule 59(e);
3. Schedule a new trial under Rule 59; and/or
4. Reconsider the amount and allocation of damages awarded.

Mot. to Amend [Dkt. 44]. Defendants filed no opposition. The motion is ripe for review.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 52(b) a court "[o]n a party's motion . . . may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). Rule 52(b) "permits the trial court to correct manifest errors

2

of law or fact, make additional findings or take other action that is in the interests of justice."
*Bigwood v. Def. Intelligence Agency*, 770 F. Supp. 2d 315, 318 (D.D.C. 2011); s*ee also Salazar v. District of Columbia*, 685 F. Supp. 2d 72, 75 (D.D.C. 2010) (noting that Rule 52(b) does not provide a party with a "second opportunity to litigate a point, to present evidence that was available but not previously offered, or to advance new theories by moving to amend a particular finding of fact or conclusion of law"); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, No. 94-1184, 1997 WL 243223, at *2 (D.D.C. May 7, 1997) (explaining that under Rule 52(b), the moving party "bears a heavy burden in seeking to demonstrate clear error or manifest injustice in amending the judgment"); *Johnson v. Greater Se. Cmty. Hosp. Corp.*, No. 90-1992, 1996 WL 377147, at *3 (D.D.C. June 24, 1996) ("Rule 52(b) ensures the adequacy of fact-finding by providing a trial court the opportunity to cover or clarify the essential factual and legal points so that they might be better understood by the parties and a reviewing court."); 9C Wright & Miller, Fed. Prac. and Proc. § 2582 (3d ed.) (A Rule 52(b) "motion must raise questions of substance by seeking reconsideration of material findings of fact or conclusions of law to prevent manifest injustice or reflect newly discovered evidence.").

Federal Rule of Civil Procedure 59(a)(1) allows a court to grant a new trial "on all or some of the issues . . . after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). "Motions for a new trial 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.'" *Nyman v. FDIC*, 967 F. Supp. 1562, 1569 (D.D.C. 1997) (quoting *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)).

Federal Rule of Civil Procedure 59(a)(2) permits a court, on a motion for a new trial after a nonjury trial, to "open the judgment if one has been entered, take additional

3

testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2). A motion to reopen the trial record to submit additional proof "is addressed to [the court's] sound discretion." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971). "A court should grant a motion under Rule 59(a)(2) only to correct manifest errors of law or fact, or, in some limited situations, to present newly discovered evidence. The purpose of Rule 59(a)(2) is not to introduce new evidence that was available at the time of trial but was not proffered, to advance new theories, or to secure a rehearing on the merits." *Chavez v. City of Albuquerque*, 640 F. Supp. 2d 1340, 1343 (D.N.M. 2008). A court faced with a Rule 59(a)(2) motion after a nonjury trial "should be most reluctant to set aside that which it has previously decided unless convinced that . . . refusal to revisit the earlier decision would work a manifest injustice. . . . Rule 59 is not a vehicle for relitigating old issues . . . or otherwise taking a 'second bite at the apple.'" *Barnes v. Alves*, 304 F.R.D. 363, 366-67 (W.D.N.Y. 2015); *see also* 11 Wright & Miller, Fed. Prac. and Proc. § 2804 (3d ed.) ("A motion for a new trial in a nonjury case or a petition for rehearing should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons.").

Federal Rule of Civil Procedure 59(e) allows a party to move to alter or amend a judgment within 28 days of the entry of judgment. "'Motions filed under Rule 59(e) are generally disfavored, and are granted only when the moving party establishes that extraordinary circumstances justify relief.'" *Moses v. Dodaro*, 856 F. Supp. 2d 99, 102 (D.D.C. 2012) (quoting *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)). Motions for reconsideration under Rule 59(e) are "discretionary and need not be granted unless the court finds that there is 'an intervening change of controlling law, the availability of new evidence, or

4

the need to correct a clear error or prevent manifest injustice.'" *Nanko Shipping, USA v. Alcoa, Inc.*, 118 F. Supp. 3d 372, 375 (D.D.C. 2015) (quoting *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006)). To constitute clear error, a final judgment "must be 'dead wrong.'" *Id.* (quoting *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012)).

"Rule 59(e) . . . 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 485 n.5 (2008) (quoting 11 Wright & Miller, Fed. Prac. and Proc. § 2810.1 (2d ed. 1995)); *see also Estate of Gaither ex rel. Gaither v. District of Columbia,* 771 F. Supp. 2d 5, 10 (D.D.C. 2011) ("In this Circuit, it is well-established that motions for reconsideration, whatever their procedural basis, cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.")

### III. ANALYSIS

The Court begins by determining which Rules are properly raised by the Fraenkels' Motion to Reconsider. The Court's Memorandum Opinion and Order on liability and damages came as a result of the Fraenkels' Motion for Default Judgment, not a trial on the merits. Although the Court held an evidentiary hearing, heard witnesses, and considered evidence submitted by the Fraenkels to reach the conclusion that Iran and Syria were liable under the FSIA, the hearing was not a trial. Therefore, any motion under Rule 59(a), either for a new trial or to open the judgment are improper.

The Court's decision on the Motion for Default Judgment is more consistent with a decision on summary judgment or other final judgment on the facts made short of a trial. Therefore, the Court considers the Fraenkels' Motion to Reconsider under Rules 52(b) and 59(e),

as follows. Both Rules 52(b) and 59(e) have limited applicability and are not intended to be used to relitigate old matters, but instead to address newly discovered facts, changes in the law, or prevent manifest injustice.

Plaintiffs fail to meet that exacting standard, offering no new facts or change in the law that supports altering the judgment and failing to demonstrate that without amendment the Court's order will result in manifest injustice. Instead, Plaintiffs' Motion for Reconsideration raises the following issues with the Court's Memorandum Opinion: (1) the amounts awarded to Plaintiffs are "insufficient to provide them fair compensation for their damages"; (2) the damages award "differed dramatically from awards made by other courts in this district"; (3) the Court failed to itemize the damages awarded to each Plaintiff; (4) the Court failed to explain adequately the reasoning behind the damages awarded; (5) the Court failed to award damages for the pain and suffering during the 18 days Naftali was missing;[1] and (6) the Court misspelled the name of the village where the Fraenkels live and inaccurately described it as a "settlement."

Plaintiffs urge the Court to follow *Estate of Heiser v. Islamic Rep. of Iran*, 466 F. Supp. 2d 299 (D.D.C. 2006), an opinion in which Judge Royce Lamberth of this Court set an award scale for plaintiffs in FSIA cases. *Heiser* has been followed by numerous judges of this Court, whom Plaintiffs cite. *See* Mot. to Amend at 14-16. Relying on *Heiser*, which Plaintiffs call the "gold standard . . . for determination of damages awards in FSIA terrorism cases," Mot. to Amend. at 11, they assert that they are, collectively, entitled to an award of no less than $35,500,000. It is true, as Plaintiffs contend, that "the Court's compensatory damages awards are inconsistent" with *Heiser*, which they describe as "established precedent in this district." *Id.*

---

[1] To the contrary, the Court's awards of damages for each individual Plaintiff took account of the entirety of the pain and suffering of that individual, including both the 18 days Naftali Fraenkel was missing and the time since learning of Naftali's murder.

6

There is no doubt that Judge Royce Lamberth is an excellent jurist of well-deserved respect and that, in *Heiser*, he developed a remedial scale for damages in FSIA terrorism cases in the context of United States servicemen killed in a bomb attack in Saudia Arabia. *See* 466 F. Supp. 2d 299. Judge Lamberth's standardized approach awards $8 million to spouses of deceased victims; $5 million to parents of deceased victims; and $2.5 million to siblings of deceased victims. Plaintiffs argue correctly that Judge Lamberth and many other judges of this Court have used the *Heiser* framework to award money damages in situations of terrorist activities that killed U.S. citizens, including attacks by Hamas in Israel.

Despite its common acceptance, *Heiser* is not binding; it is an opinion of a valued colleague, not a superior court. This jurist believes that awards made through the "lens of civil tort liability" require all FSIA plaintiffs to justify their damages, which means that damages must be reasonably tied to a plaintiff's facts. *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 176 (D.D.C. 2010). Thus, different plaintiffs (even under FSIA) will prove different facts that may well (and should) result in different damage awards. This Court has previously declined to adopt *Heiser*, so its position now should not be a surprise. *See Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008). The Court views the Fraenkels' claims in contrast to the claims of the plaintiffs in *Gates* and finds that the specific facts surrounding Naftali's kidnapping and murder warrant a damages award below that awarded by this Court in *Gates*.

To begin the discussion, the Court notes that once a plaintiff has demonstrated "his claim or right to relief [under the FSIA] by evidence satisfactory to the court," 28 U.S.C. § 1608(e), the plaintiff may be awarded "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). Plaintiffs must justify the actual amount of damages through the lens of civil tort liability. *See Salazar v. Islamic Republic of Iran*, 370 F.

Supp. 2d 105, 115-16 (D.D.C. 2005) (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003) ("To obtain damages against defendants in an FSIA action, the plaintiff must prove that the consequences of the defendants' conduct were 'reasonably certain (i.e., more likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with this [Circuit's] application of the American rule on damages.'")).

First, the Court recognizes the differences between the victims and surviving family members in *Gates* and this case. The victims in *Gates* were U.S. citizens temporarily living abroad in Iraq and working as civilian contractors that "provided technical and operational assistance and resources for the military in non-combat environments." *Gates*, 580 F. Supp. 2d at 56. They were abducted because they were U.S. citizens living abroad engaged in work at the behest of the United States government and brutally murdered in slow beheadings with a knife, broadcast across the world on the Internet. Rachelle Fraenkel and her children are all natives of Israel and dual U.S. and Israeli citizens living in Nof Ayalon, Israel, which straddles the Green Line.[2][3]

---

[2] The Green Line, so-named for the green ink used to draw it on a map, is the demarcation line between Israel and Jordan and Israel and Egypt, which notes the agreement reached as part of the Armistice in 1949. The armistice agreements were intended to serve as interim agreements pending permanent peace treaties. *See Armistice Lines (1949-1967)*, Israel Ministry of Foreign Affairs, http://mfa.gov.il/MFA/AboutIsrael/Maps/Pages/1949-1967%20Armistice%20Lines.aspx (last visited June 22, 2017).

[3] Plaintiffs object that this Court called Nof Ayalon a "settlement" because the term has political connotations that do not apply; they argue that Nof Ayalon is in the center of Israel. The Court was only noting the fact that Nof Ayalon sits on top of the Green Line and so half of it is, officially, in contested territory. *See* Google Maps – Nof Ayalon, Israel, https://www.google.com/maps/place/Nof+Ayalon,+Israel/@31.8589179,35.007935,14.3z/data=!4m5!3m4!1s0x1502ce897aca714d:0xdf8bea0c5e055324!8m2!3d31.871215!4d34.991321 (last visited June 21, 2017).

The Six Day War of 1967 was fought fifty years ago this month and a full truce between some of the warring parties has never been reached. The West Bank, the Gaza Strip, East Jerusalem, and the Golan Heights were seized by Israel at the end of the Six Day War and peace efforts to re-draw the boundaries since then have not succeeded. *See The 1967 Arab-Israeli War*, U.S. Department of State, Office of the Historian, https://history.state.gov/ milestones/1961-1968/arab-israeli-war-1967 (last visited June 22, 2017). "Hamas, both an acronym for *Harakat al-Muqawama al-Islamiya* (Islamic Resistance Movement) and an Arabic word meaning 'zeal', is a Palestinian Islamist group that emerged in 1987 as an outgrowth of the Palestinian branch of the Egypt-based Muslim Brotherhood. Hamas was founded in December of that year with the goal of eliminating the State of Israel." Ex. 34, Declaration of Dr. Matthew Levitt (Levitt Decl.) ¶ 19. Hamas seeks to consolidate Israel, the West Bank, and the Gaza Strip into a single Islamist state. *Id.*

Plaintiffs accepted the risks of living in a community built across the Green Line in Israel and sending Naftali Fraenkel 40 miles further into the West Bank for high school in Gush Etzion. Gush Etzion is about six miles from Hebron, a predominately Palestinian city. *See* Ex. 21, Declaration of Arieh Dan Spitzen (Spitzen Decl.) ¶ 20 n.3. At age 16, Naftali Fraenkel was hitchhiking home at 10:30 at night from Gush Etzion Junction when he and two other young men were picked up by two Hamas members disguised as Israelis. Plaintiffs' own expert describes the junction as a site of "many terror attacks" since 2000.

> Gush Etzion Junction, commonly known as "Gush Junction," is located approximately 13 miles south of Jerusalem and 6 miles north of Hebron. Due to its central location and the daily encounter between Israeli citizens and Palestinians, many terror attacks have taken place at this junction since the year 2000, especially during the latest wave of terror, which began in 2015.

*Id*. Rachelle Fraenkel explained that "[t]he boys thought they were getting a ride home in a spot where hitchhiking is very normal and usually safe." Ex. 11, Declaration of Plaintiff Rachelle Fraenkel (R. Fraenkel Decl.) ¶ 43. Ms. Fraenkel also stated that "[a]s soon as [she] heard that [the boys' phones were traced to Hebron], [she] understood that it was an act of terrorism." *Id.* ¶ 21.

Expert witness Arieh Dan Spitzen further explained the significance of the situation and the method of attack used:

> It is significant that the kidnapping of Jews—designed to obtain the release of Hamas prisoners from Israeli prisons—is a preferred modus operandi for Hamas. Furthermore, Hamas regards the kidnapping of Jews as a strategic weapon in its struggle against Israel. . . . [Since 2011, when Israel released more than 1,000 Palestinian terrorists to obtain the release of one Israeli Defense Forces (IDF) soldier], the organization has increasingly preferred this method, considering it to be highly effective.

Spitzen Decl. ¶ 24 Expert witness Dr. Matthew Levitt added, "both before and after [the 2011 release of 1,000 Palestinians], Hamas has ceaselessly engaged in kidnappings and attempted kidnappings in hopes of gaining a valuable bargaining chip to use in future negotiations with Israel." Levitt Decl. ¶ 22. Hamas itself "described the attack as a[n] 'heroic' operation in which three 'settlers' were captured in Hebron and stated that the operation was performed for the sake of the Palestinian prisoners, who were hunger-striking in the prisons at the time." Spitzen Decl. ¶ 30.

Thus, Naftali Fraenkel and the other two young men were kidnapped and murdered because they were Jewish-Israeli teenagers. Naftali was not targeted because he was a U.S. citizen, Levitt Decl. ¶ 21 (Hamas does not target Westerners), and he was not a U.S. citizen inadvertently caught up in the Israeli-Palestinian conflict (Naftali was born and grew up in Israel). To the contrary, Naftali Fraenkel was an Hamas target because of his Israeli citizenship.

These facts do nothing to lessen the Plaintiffs' grief or loss or U.S. citizenship, but they do affect their remedies when viewed through the lens of civil tort liability. Aside from Rachelle Fraenkel's single statement about the safety of hitchhiking from Gush Etzion, the record is bereft of information to counter Plaintiffs' own experts' statements that the location was the site of many terror attacks aimed at Jewish-Israeli citizens. Further, the case is in the posture of a default judgment, which requires the judge to exercise balanced legal judgments despite the absence of an adversary, on both the facts and the law. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 232 (D.C. Cir. 2003) ("The court still has an obligation to satisfy itself that plaintiffs have established a right to relief [under the FSIA].").

In addition to challenging the overall infirmity of the damages award, Plaintiffs argue that the Court's award of a single damages amount to all U.S. citizen Plaintiffs was insufficient and ask the Court to make individual awards to each Plaintiff. Although the Court specifically chose to award a single amount to prevent the Fraenkel children from thinking any testimony was more or less useful or significant, the Court will provide each Plaintiff with their specific award amount. For the reasons described above, the Court awarded Ms. Rachelle Fraenkel and Mr. Abraham Fraenkel each $1,000,000 in solatium damages.

As in *Heiser* and this Court's decision in *Gates*, siblings of victims generally receive less than spouses or parents. Therefore, the Court awarded $500,000 in solatium damages to Tzvi Fraenkel, A.H. Fraenkel, A.L. Fraenkel, and N.E. Fraenkel. Due to the age of both N.S. Fraenkel and S.R. Fraenkel at the time of Naftali's death, the Court determined that a lower award was appropriate.

## IV. CONCLUSION

The deaths of Naftali Fraenkel and his friends were tragic actions carried out by Hamas terrorists in an attempt to influence Israel. Only Hamas and its supporters are at fault. Plaintiffs have presented no new evidence or law and have not demonstrated that the Court's initial decision constitutes manifest injustice. Therefore, the Court will deny Plaintiffs' Motion to Amend, but clarifies the awards for damages to each U.S. citizen Plaintiff.

Solatium to Rachelle Fraenkel – $1,000,000

Solatium to Tzvi Amitay Fraenkel - $500,000

Solatium to A.H. Fraenkel - $500,000

Solatium to A.L. Fraenkel - $500,000

Solatium to N.E. Fraenkel - $500,000

Solatium to N.S. Fraenkel - $50,000

Solatium to S.R. Fraenkel - $50,000

Date: June 28, 2017                              /s/
ROSEMARY M. COLLYER
United States District Judge